RANDY S. GROSSMAN
United States Attorney
John Parmley
Fred Sheppard
Assistant U.S. Attorneys
California Bar No.: 178885/250781
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101
Tel: (619) 546-7957/8237
Emails: john.parmley@usdoj.gov
        fred.sheppard@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 21-CR-02927-JM |
|---|---|
| Plaintiff, | Date: October 24, 2022 |
| v. | Time: 9:00 a.m. |
| SHAPOUR MOINIAN, aka Lion King, | **UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | |

# I

# INTRODUCTION

Defendant Shapour Moinian ("Defendant") is a former U.S. military pilot and defense contractor with a security clearance who repeatedly lied about his foreign contacts and failed to disclose that he was receiving cash payments from individuals affiliated with Chinese intelligence services. Defendant now faces sentencing by this Court following his conviction for acting as an agent of a foreign government, in violation of 18 U.S.C. §951 and two counts of making a false statement in violation of 18 U.S.C. §1001. Given this egregious breach of trust, the United States recommends a sentence of 20 months

imprisonment. This is appropriate and reasonable given the nature and seriousness of Defendant's conduct.

## II
## OFFENSE CONDUCT

The Presentence Investigation Report ("PSR") accurately summarizes the offense conduct. *See* PSR at ¶¶ 4-11. As described in the PSR and herein, an investigation by FBI and NCIS revealed that Defendant, despite having a security clearance to work on classified projects with civilian contractors in the aerospace industry, nevertheless traveled overseas and met with individuals associated with Chinese intelligence services. He accepted payment in exchange for providing them with project data, including proprietary information, from his employers. He lied about these contacts on multiple occasions during background checks associated with renewing his security clearance.

A. <u>Defendant's Background</u>

Defendant was a pilot in the U.S. military until 2000. He has extensive experience working on planes and flying them. After his retirement, he worked for various aerospace defense contractors on projects that required that he maintain a security clearance. This clearance allowed him to work on classified military projects.

B. <u>Defendant Recruited to Work in China/First Trip Overseas</u>

In 2016, while working for a Cleared Defense Contractor ("CDC"), Defendant was recruited by an individual through an online employment service. Eventually, in March of 2017, Defendant flew to Hong Kong to meet with this individual to discuss an employment opportunity. At the time, Defendant was employed in San Diego at a CDC working on aviation projects used by U.S. military and intelligence agencies.

During this trip, Defendant met with individuals and agreed to provide information and material related to multiple types of aircraft in exchange for money. In fact, he accepted approximately $7,000 to $10,000 during the trip. More importantly, Defendant knew that these individuals were employed by the government of the People's Republic of China and that he was acting at their direction.

After the trip, Defendant began to gather aviation-related information, including material from a CDC on a thumb drive. He communicated with the Chinese and updated them on his progress. As noted below, Defendant repeatedly lied about these foreign contacts in renewing his security clearance, much less notify the Attorney General of his agreement to work for China as required by law.

C. Defendant Lies on Clearance Questionnaire

In July of 2017, as part of his continued employment at a CDC, Defendant was required to update his national security clearance. In filling out his questionnaire, Defendant stated that he had not had close or continuing contact with a foreign national. This was a lie. He also lied when answering that he was not offered employment by a foreign national.

D. Defendant's Second Trip Overseas

In September 2017, Defendant traveled overseas with a layover in Shanghai. While at the airport, he met with his Chinese contacts and provided them a thumb drive containing proprietary information from a CDC. In exchange for this information, Defendant's PRC contacts wired thousands of dollars into his stepdaughter's bank account in South Korea. She, in turn, transferred the money to him in the United States at his request.

Defendant also received a cellular telephone and other equipment from the Chinese, which he was to use to communicate with them and to assist with transferring information to them.

E. Defendant' Third Trip Overseas

In March 2018, Defendant traveled overseas again, meeting with his PRC contacts in Bali. Thereafter, Defendants was again paid thousands of dollars, which was funneled through his stepdaughter's South Korean bank account.

F. Defendant's Fourth Trip Overseas

In August 2019, Defendant, who was now working for a different CDC, travelled to Hong Kong to again meet with his PRC contacts. In return, Defendant was given approximately $22,000 in cash, which he and his wife smuggled back into the United States without declaring it.

### G. Defendant Lies Again on Security Questionnaire

In March 2020, Defendant once again intentionally submitted false answers to his security clearance questionnaire. In doing so, Defendant reaffirmed that he had no close foreign contacts or activities.

### H. Other Actors

As described in the PSR, agents interviewed Defendant's only friend according to Defendant himself, who admitted sending aviation-related information to Defendant at his request. The friend admitted to stripping proprietary classification markings before providing it to Defendant.[1] When the CDC was asked about this document, they stated that it would be beneficial to a foreign adversary.

### I. Additional Information

Recently, after the PSR was filed, the United States learned that Defendant sought employment with another aerospace company. During the application process, Defendant claimed he had retired in May 2021, but decided to work again. Not true.

From May 2021 until his arrest on October 1, 2021, Defendant was working at a CDC, where he was preparing to permanently relocate to South Korea and continuing working on an aviation project used by the military.

During the application process, Defendant also demurred working on classified projects. But not because he had pled guilty to working as an agent of a foreign government, who sold secrets and proprietary information for cash. Instead, Defendant said it wasn't worth the hassle or effort to get a security clearance because his wife is from South Korea.

//
//
//
//
//

---

[1] This individual also admitted that he submitted a fraudulent letter in support of the sham immigration marriage of Defendant's stepdaughter.

# III
# SENTENCING GUIDELINES ANALYSIS

## A.   Parties' Guideline Calculations

Pursuant to the plea agreement, the parties jointly agreed that the U.S.S.G. do not specify a guidelines range for a violation of 18 U.S.C. § 951 (Count 1). Defendant acknowledged that where the Guidelines do not expressly specify a Guidelines range, the Court should "apply the most analogous guideline." In this case, the parties agree that no such guideline exists and that the remaining provisions of 18 U.S.C. § 3553 should control the sentence. In other words, the parties agree that the Court should calculate the guidelines for Counts 2 and 3, but that there are no relevant guidelines for Count 1.

As for Counts 2 and 3, the parties jointly recommend the following guidelines:

| | |
|---|---:|
| Base Offense Level [USSG § 2J1.2] | 14 |
| Acceptance of Responsibility [USSG §§ 3E1.1(a) and (b)] | -3[2] |
| Adjusted Offense Level: | 11 |

As discussed more fully below, the United States submits that a consideration of all the 18 U.S.C. § 3553(a) factors warrant a sentence of 20 months in custody.

# III
# SECTION 3553(a) SENTENCING ANALYSIS

## A.   The Section 3553(a) Sentencing Factors Support a Sentence of 20 Months

As part of the sentencing process, the court is to consider the factors set forth in 18 U.S.C. § 3553(a), and impose a sentence that is sufficient, but not more than necessary, to

---

[2]   This is technically erroneous, as the third point for acceptance of responsibility is only available if the adjusted offense level is higher than 16. As noted above, however, the parties agree that the guidelines do not apply to Count 1. Therefore, this is moot, given the Government's recommendation of 20 months in custody (which would be an approximate adjusted level of 15, assuming 3 points off for acceptance of responsibility, CHC I, and a range of 18-24 months). In any event, the plea agreement should be construed in Defendant's favor.

achieve the goals of sentencing. Here, a balanced consideration of the relevant 3553(a) factors support a 20-month sentence.

### 1. Nature and Circumstances of the Offense

As explained above, Defendant abused his position of trust and hired himself out to the Chinese government. He provided sensitive information obtained through his employment on government and military projects at various CDCs in exchange for money. He lied to the United States about his foreign contacts as part of the process to maintain his government security clearance.

### 2. History and Characteristics of the Defendant

Defendant is a naturalized citizen from Iran, having arrived in the United States in 1976 and joining the military. He served in the Army for many years, gaining experience as a mechanic and pilot. He has a Bachelor of Science degree in biology and a Master of Science degree in aeronautical science. After leaving the Army in 2000, he has an extensive employment history, mostly related to CDCs and aviation. He has no criminal history. He has health issues as discussed in the PSR.

While Defendant's military service is laudable, it is both a mitigating and an aggravating factor. Because of his experience, he has much more information of interest to foreign governments than a typical individual. Furthermore, he was able to successfully leverage his veteran background into jobs at CDCs where he obtained security clearances working on defense-related aviation projects. Defendant knew more than anyone the harm he could do to the United States by sharing sensitive information with a foreign adversary.

As noted in the PSR, Defendant also committed immigration fraud by arranging a sham marriage for his stepdaughter. Yet another instance of Defendant lying to the United States.

### 3. Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment

This was a serious offense. Defendant was entrusted with classified, sensitive, and proprietary information through his employment at various CDCs and the U.S. military as

6

21CR02927-JM

a both an officer and later as a civilian contractor. He worked on classified military aerospace projects. As part of obtaining his clearance to work on these projects, he was asked to truthfully disclose his foreign contacts. The concern, of course, being that employees would share this sensitive information with individuals and governments overseas and, as a result, directly harm the United States.

Nevertheless, Defendant chose to share information with people "he knew . . . were employed by or directed by the government of the Peoples Republic of China" and "knew he was acting at the direction of a foreign government." Dkt. No. 62 at 3. This was an outrageous breach of trust. Moreover, given the way Defendant passed information, hand-to-hand while overseas, the United States has no way of knowing what information was passed and how damaging it was to the United States. The United States relies on people to tell the truth when they are given access to classified information. Defendant's lies allowed him to keep a clearance that he would not otherwise be able to keep.

### 4   Afford Adequate Deterrence

The twenty-month sentence recommended by the government addresses both the need to deter Defendant from future criminal activity (i.e., specific deterrence) and the need to deter others from engaging in such activity (i.e., general deterrence).

<u>Specific Deterrence</u> – Defendant lost his job at a CDC and will lose his security clearance. He is unlikely to be able work on projects with access to sensitive materials. Nevertheless, as described above, this has not stopped him from seeking additional employment in the aerospace industry and lying to potential employers about his background. It is hoped that a 20-month sentence is sufficient to deter Defendant from future criminal conduct.

<u>General Deterrence</u> – As noted above, this is a serious offense. The United States relies on individuals to truthfully disclose their foreign contacts before being provided with classified and sensitive information. A sentence lower than 20 months will not sufficiently deter those who are considering whether it is worth the risk to sell such information to China or other nations.

# IV
# CONCLUSION

For the above reasons, the United States respectfully requests that this Court impose a sentence of 20 months' custody, followed by a three-year term of supervised release.

DATED: October 17, 2022.

Respectfully submitted,
RANDY S. GROSSMAN
United States Attorney

*/s/John Parmley*
JOHN PARMLEY
FRED SHEPPARD